[Cite as *Magda v. Ohio Elections Comm.*, 2016-Ohio-5043.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kathy Magda et al., | : | |
| Plaintiffs-Appellants, | : | No. 14AP-929 |
| v. | : | (C.P.C. No. 12CV-13674) |
| Ohio Elections Commission et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

# D E C I S I O N

### Rendered on July 21, 2016

**On brief:** *The Law Firm of Curt C. Hartman*, and *Curt C. Hartman*; *Finney Law Firm, LLC*, and *Christopher P. Finney*, for appellants. **Argued:** *Christopher P. Finney*.

**On brief:** *Michael DeWine*, Attorney General, *Tiffany Carwile*, and *Sarah E. Pierce*, for appellee Ohio Elections Commission. **Argued:** *Tiffany Carwile*.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} This decision is a review of an administrative appeal pursuant to R.C. 119 affirming the decision of the defendant-appellee, Ohio Elections Commission ("Commission"), and the trial court's granting of summary judgment in favor of the Commission on a contemporaneously filed declaratory judgment action, both brought by plaintiffs-appellants, Kathy Magda ("Magda") and the Committee to Elect Kathy Magda (all collectively known as "appellants"). For the reasons that follow, we overrule appellants' third assignment of error and thereafter consider appellants' first and second assignments of error, sustaining them and remanding this matter for entry of judgment consistent with this decision.

No. 14AP-929

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} To support a bid for election to the office of Ashtabula County treasurer, appellants published a campaign flyer and newspaper advertisement with a graphic stating "Kathy Magda" and "Ashtabula County Treasurer" directly beneath it. L. George Distel, a former Ashtabula county commissioner and Ohio state representative, filed a complaint with the Commission, alleging that appellants had violated R.C. 3517.21(B)(1) by implying that Magda currently held the office of Ashtabula County treasurer. After a hearing, the Commission found a violation of the statute but no cause to refer the matter for prosecution. Appellants filed an administrative appeal to the Franklin County Court of Common Pleas pursuant to R.C. 119, and in the same action filed a complaint for declaratory judgment, and pursuant to 42 U.S.C. 1983, claimed that the statute used to prosecute them, R.C. 3517.21(B)(1), is unconstitutional. Appellants sought a permanent injunction against the State of Ohio's enforcement of the statute.

{¶ 3} The trial court consolidated appellants' action with a separate administrative appeal filed by a candidate for state senate, Teresa Scarmack, and her campaign committee, of a similar Commission violation order. The trial court reversed the Commission's Scarmack decision, but it affirmed the Commission's Magda decision and denied on cross-motions for summary judgment appellants' claims for declaratory judgment relief that R.C. 3517.21(B) is an impermissible content-based restriction on free speech that does not withstand strict scrutiny, and entered judgment in favor of the Commission.

{¶ 4} The statute in question, applied and considered in both the administrative appeal and declaratory judgment, is R.C. 3517.21(B)(1), which provides:

> (B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:
>
> (1) Use the title of an office not currently held by a candidate in a manner that implies that the candidate does currently hold that office or use the term "re-elect" when the candidate has never been elected at a primary, general, or special election to the office for which he or she is a candidate.

No. 14AP-929

{¶ 5} From the outset, appellants have maintained that any implication or suggestion in the campaign flyer and newspaper advertisement that Magda was the current Ashtabula County treasurer was inadvertent and unintentional, and there was no evidence of any design or purpose to mislead. The trial court affirmed the Commission's finding of a violation of R.C. 3517.21(B)(1) on the authority of *Ohio Democratic Party v. Ohio Elections Comm.*, 10th Dist. No. 07AP-876, 2008-Ohio-4256 ("*ODP*"), which concerned an advertisement containing photographs of candidates seeking office, with each candidate's name and the title of the office under each photograph. In *ODP,* we affirmed the Commission's violation order and held that the text and appearance of the advertisement "would communicate to a reasonable reader that the * * * candidates currently held the offices of which they were seeking." *Id.* at ¶ 30. In fact, in that case, none of them currently held the office.

{¶ 6} In *ODP*, the Commission had dismissed the individual candidates named as respondents in the administrative complaint, and the violation applied only to the remaining respondent, the state party chairman. We resolved that the Commission had clear and convincing evidence that the chairman knowingly, and with intent to affect the outcome of a political campaign, had used in campaign material, titles of offices not currently held, in a manner that implied incumbency. *Id.* at ¶ 33. The chairman was expressly identified on the flyer as the sender, and nothing in the record suggested that he did not authorize and approve its distribution. There was no dispute that he knew that none of the candidates currently held the offices they were seeking. We further decided that, since R.C. 3517.21(B)(1) "does not apply to circumstances only involving negligence or even recklessness," and a violation must be proved by clear and convincing evidence, the statute was not unconstitutionally overbroad. *Id.* at ¶ 20.

{¶ 7} In the matter under review, the trial court found that a reasonable reader would interpret the campaign flyer and advertisement to imply that Magda was the Ashtabula County treasurer, and the trial court considered this misstatement to have been a more apparent violation of R.C. 3517.21(B)(1) than the arguably misleading advertisement in *ODP.* The trial court also rejected appellants' challenge to the statute and declined to find the applied provisions of R.C. 3517.21(B)(1) to be an invalid restriction of speech under the First

No. 14AP-929

and Fourteenth Amendments to the United States Constitution[1] and Article I, Section 11 of the Ohio Constitution.[2] Since the time of oral argument on appeal to this Court, the United States Court of Appeals for the Sixth Circuit decided the matter of *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir.2016) (hereinafter "(2016) *Susan B. Anthony List*"), holding that "Ohio's political false-statements laws are content-based restrictions targeting core political speech that are not narrowly tailored to serve the state's admittedly compelling interest in conducting fair elections." In (2016) *Susan B. Anthony List,* the Sixth Circuit Court of Appeals ruled R.C. 3517.21(B)(9) and (10) unconstitutional concerning the voting records of candidates and false statements in campaigns generally.[3] (2016) *Susan B.*

---

[1] " 'Congress shall make no law * * * abridging the freedom of speech.' The Fourteenth Amendment of the United States Constitution makes the freedom of speech provision of the First Amendment applicable to the states." *ODP* at ¶ 11, citing *Ladue v. Gilleo*, 512 U.S. 43, 45 (1994), fn. 1.

[2] "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech." Article I, Section 11, Ohio Constitution. "[T]he free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution." *Eastwood Mall, Inc. v. Slanco,* 68 Ohio St.3d 221, 222 (1994).

[3] R.C. 3517.21(B)(9) and (10) provide:

> (B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:
>
> * * *
>
> (9) Make a false statement concerning the voting record of a candidate or public official;
>
> (10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.
>
> As used in this section, "voting record" means the recorded "yes" or "no" vote on a bill, ordinance, resolution, motion, amendment, or confirmation.

R.C. 3517.21(B)(10) is a "catchall" division appearing in R.C. 3517.21(B) after enumerated, specific examples of false statements in that section, such as using the title of an office not held (R.C. 3517.21(B)(1)); making a false statement concerning a candidate's credentials (R.C. 3517.21(B)(2) and (3)); making a false statement concerning a criminal indictment or conviction of a candidate or public official, including an Ohio Elections Commission finding concerning a candidate and without disclosing the outcome of proceedings (R.C. 3517.21(B)(4) and (5)); making a false statement concerning a candidate's or official's mental health condition and/or treatment (R.C. 3517.21(B)(6)); making a false statement concerning a candidate's military discipline and/or discharge (R.C. 3517.21(B)(7)); falsely identifying the source of a statement, issuing statements in the

No. 14AP-929

*Anthony List* at 476. The Sixth Circuit agreed that the state's interest in election integrity is compelling, but it held that its "political false-statement laws" are not "narrowly tailored in their (1) timing, (2) lack of a screening process for frivolous complaints, (3) application to non-material statements, (4) application to commercial intermediaries, and (5) over-inclusiveness and under-inclusiveness." *Id.* at 474.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellants argue the following assignments of error:

[1.] The trial court erred in granting summary judgment in favor of the Appellees so as to find that the Appellees satisfied their evidentiary burden of actually satisfying the "well-nigh insurmountable obstacle" of strict scrutiny so as to establish that R.C. 3517.21(B)(1) satisfies the requirements of the First Amendment.

[2.] The trial court erred in denying summary judgment in favor of Appellants when the Appellees failed to meet their evidentiary burden of actually satisfying the "well-nigh insurmountable obstacle" of strict scrutiny so as to establish that R.C. 3517.21(B)(1) satisfies the requirements of the First Amendment.

[3.] The trial court erred in affirming the decision of the Ohio Elections Commission finding, by clear and convincing evidence, a violation of R.C. §3517.21(B)(1).

## III. STANDARD OF REVIEW

{¶ 9} As we stated in *ODP*:

Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265; see, also, *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 131 N.E.2d 390. *Generally, an appellate court determines whether the trial court abused its discretion in review of the agency order. Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264. *However, on questions of law, the review of the court of appeals is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*

---

name of another person without authorization or falsely stating endorsements of or opposition to a candidate by a person or publication (R.C. 3517.21(B)(8)).

No. 14AP-929

> (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.
>
> In cases involving the First Amendment, as in the case at bar, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L. Ed. 2d 502, quoting *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 284-286, 84 S.Ct. 710, 11 L. Ed. 2d 686; see, also, *The Team Working for You v. Ohio Elections Comm.* (2001), 142 Ohio App.3d 114, 119, 754 N.E.2d 273, citing *Bose Corp.*

(Emphasis added.)  *Id.* at ¶ 9-10.

{¶ 10} Thus, we review the trial court's decision pursuant to R.C. 119 for abuse of discretion, but we review de novo its decision to uphold R.C. 3517.21(B)(1) against appellants' First Amendment challenge.  In other words, "[i]t is incumbent on the trial court to examine the evidence.  Such is not the charge of the appellate court.  The appellate court is to determine only if the trial court has abused its discretion. * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment." *Lorain City Bd. of Edn. v. State Emp. Relations Bd.,* 40 Ohio St.3d 257, 261 (1988).  As we stated in *Yohannes Parkwood, Inc. v. Ohio Liquor Control Comm.,* 10th Dist. No. 13AP–974, 2014-Ohio-2736, ¶ 10:

> The appellate court reviews factual issues to determine whether the court of common pleas abused its discretion in determining that the administrative action either was or was not supported by reliable, probative and substantial evidence. *Alternative Residences, Two, Inc. v. Ohio Dept. of Job and Family Servs.,* 10th Dist. No. 04AP-306, 2004-Ohio-6444, ¶ 17. *See also Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983) (" 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."). Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Pons* [*v. Ohio State Med. Bd.*, 66 Ohio St. 3d 619] at 621. An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.,* 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15, 784 N.E.2d 753 (10th Dist.).

{¶ 11} Additionally, the standard of review through the lens of summary judgment calls for a de novo review of issues decided by the trial court on summary judgment. "Appellate review of summary judgment motions is de novo." *Hershey v. Eldeman*, 187 Ohio App.3d 400, 2010-Ohio-1992, ¶ 11 (10th Dist.). This includes the review of cross-motions for summary judgment. *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-902, 2008-Ohio-3691, ¶ 24. On motions for summary judgment the appellate court "conducts an independent review, without deference to the trial court's determination." *Smallwood v. MCL, Inc.,* 10th Dist. No. 14AP-664, 2015-Ohio-1235, ¶ 6. Here, as well, our review of issues of law is plenary. *Calo v. Ohio Real Estate Comm.,* 10th Dist. No. 10AP-595, 2011-Ohio-2413, ¶ 11, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.,* 63 Ohio St.3d 339, 343 (1992). As such, we examine on review whether it was appropriate for the trial court to rule as it did on the cross-motions for summary judgment before it.

> Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.

*Watley* at ¶ 22.

## IV. DISCUSSION OF LAW

### A. Third Assignment of Error—Appeal from Finding of Violation of R.C. 3517.21(B)(1)

{¶ 12} We first address appellants' third assignment of error respecting the trial court's decision affirming the Commission's order finding a violation of R.C. 3517.21(B)(1). In short, we examine whether the trial court abused its discretion in holding that the Commission's decision finding appellants to have violated R.C. 3517.21(B)(1), aside from constitutional challenges, was based on reliable, substantial, and probative evidence. *Lorain City Bd. of Edn.*

{¶ 13} Appellants maintain in their appeal from the Commission's finding of violation of R.C. 3517.21(B)(1), that their publication of the flyer and newspaper advertisement without the words "for" or "elect" was inadvertent and unintentional. They argue that they did not try to deceive anyone to believe that Magda was the current Ashtabula County treasurer, and they sought to excuse the error as a mistake by political novices. Neither the candidate nor

No. 14AP-929

her husband, Steve Magda (who prepared the campaign material in question), was a politician with the position and experience of the respondent in *ODP*. The trial court here affirmed the Commission's order based on its findings that Magda knew she was not the current county treasurer and that Steve Magda knowingly engaged in conduct prohibited by the statute, regardless of whether he knew he was violating the law.

{¶ 14} To satisfy the knowledge element of the statute, there had to be clear and convincing evidence that appellants used the title of "Ashtabula County Treasurer" knowingly to imply that Magda currently held the office. *ODP* at ¶ 15, citing R.C. 3517.155(D)(1). The trial court found the evidence before the Commission sufficient to support a finding of a violation of R.C. 3517.21(B)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *ODP* at ¶ 15, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 15} Comparatively, in the consolidated Scarmack matter, the trial court in its administrative appellate review relied on commissioners' statements to the effect that Scarmack's situation was unfortunate: she did not mean to violate the statute, and may not have recognized what she was doing. The problematic Facebook post in the Scarmack campaign was worded in this way: "Thanks in advance for your support as we all work to put Senator Teresa Scarmack into the statehouse." *Scarmack v. Ohio Elections Comm.*, Franklin C.P. No. 12CVF-13753 (May 22, 2015) (herein after the "*Scarmack Decision*"). The trial court decided in reversing the Commission's decision in that case that an objective and reasonable reader would understand that Scarmack wanted to be put into the statehouse since she was not yet there, and, therefore, there was no clear and convincing evidence that Scarmack had used the title in a manner implying she already held the office. The trial court also accepted Scarmack's testimony that she never intended the Facebook post to be construed as implying that she was a senator. This, along with individual commissioners' comments, sufficed for the trial court to negate the Commission's finding that Scarmack knowingly implied she was an incumbent, in violation of R.C. 3517.21(B)(1).

{¶ 16} By contrast, the trial court did not give the same credit to Steve Magda's testimony, however uncontroverted, that identification of his wife with "Ashtabula County Treasurer" without the words "for" or "elect" in the flyer and advertisement, was an inadvertent oversight. The Magda advertisements listed the candidate's name with the phrase, "Ashtabula County Treasurer," directly beneath it. Magda has never held the office of Ashtabula County treasurer.

{¶ 17} There was no mitigating language, such as "put her in office" as there was in Scarmack's situation ("put Senator Teresa Scarmack into the statehouse"). *Scarmack Decision* at 11. Additionally, the medium used for communication in Scarmack's case was a single Facebook post, as opposed to printed and purposefully disseminated hard copy campaign materials in appellants' case. The trial court did not abuse its discretion in finding that Magda and her campaign used the title of the office she did not currently hold in a manner that implies that she did currently hold the office. The evidence was clear and convincing that Magda and her campaign knew that she did not hold the office. The determination whether the statement is a false assertion of fact is made from the perspective of the reasonable reader and not from that of the publisher of the statement. *McKimm v. Ohio Elections Comm.,* 89 Ohio St.3d 139, 144 (2000).

{¶ 18} The trial court did not abuse its discretion in finding that the Commission had before it reliable, substantial, and probative evidence from which to conclude under the statutory scheme, that by advertising Magda as the Ashtabula County treasurer, appellants had acted knowingly and with intent to affect the outcome of the campaign. Based on our review of the facts, we do not find any error of law or judgment in the decision to affirm the Commission's violation order. Nor do we find that the decision of the trial court was so unreasonable, arbitrary, or unconscionable as to constitute an abuse of discretion. The third assignment of error is overruled. Having found appellants violated R.C. 3517.21(B)(1), we proceed with an analysis of appellants' arguments that the statute is unconstitutional on its face.

**B. First and Second Assignments of Error—Constitutionality of R.C. 3517.21(B)(1)**

{¶ 19} Appellants argue their first and second assignments of error together, and we similarly address them together. In the parties' cross-motions for summary judgment, appellants attacked the constitutionality of R.C. 3517.21(B)(1) on its face. "A facial challenge

No. 14AP-929

to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. * * * The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37, citing *United States v. Salerno,* 481 U.S. 739, 745 (1987). "[S]tatutes carry a strong presumption of constitutionality. * * * The party challenging the statutes bears the burden of proving that the legislation is unconstitutional beyond a reasonable doubt." *Harrold* at ¶ 36.

### 1. Strict Scrutiny of Content-Based Government Regulation of Political Speech

{¶ 20} The Sixth Circuit Court of Appeals in its recent (2016) *Susan B. Anthony List* opinion held that R.C. 3517.21(B) is subject to strict scrutiny:

> [O]n their face, Ohio's political false-statements laws target speech at the core of First Amendment protections—political speech. * * * Ohio's laws reach not only defamatory and fraudulent remarks, but all false speech regarding a political candidate, even that which may not be material, negative, defamatory, or libelous. *Compare* Ohio Rev. Code § 3517.21(B)(9) (prohibiting false statements about a candidate's voting record), with § 3517.21(B)(10) (a catchall provision, prohibiting, in general, "a false statement concerning a candidate."). Accordingly, strict scrutiny is appropriate.

> * * *

> The Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236, sought to clarify the level of review due to certain speech prohibitions. *That test focused on whether a law was content-based at all, rather than the type of content the law targeted.* The *Reed* Court held that strict scrutiny is the appropriate level of review *when a law governs any "specific subject matter . . . even if it does not discriminate among viewpoints within that subject matter." Id.* at 2230 (citing *Consol. Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980)). Content-based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Ohio's political false-statements laws only govern speech about political candidates during an election. Thus, they are

No. 14AP-929

> content-based restrictions focused on a specific subject matter and are subject to strict scrutiny.
>
> * * *
>
> Laws subject to strict scrutiny are presumptively unconstitutional and can only survive if they (1) serve a compelling state interest and (2) are narrowly tailored to achieve that interest. *Id.*; *McIntyre*, 514 U.S. at 346-47. " '[I]t is the rare case in which a speech restriction withstands strict scrutiny.' " *Reed*, 135 S. Ct. at 2236 (Kagan, J., concurring in the judgment) (citation and alterations omitted).

(Emphasis added.) (2016) *Susan B. Anthony List* at 473. Based on the reasoning in (2016) *Susan B. Anthony List* we find that R.C. 3517.21(B)(1) governs specific content or subject matter, that being false statements of whether or not the candidate holds the office he or she is seeking. Accordingly, we hold R.C. 3517.21(B)(1) to be a content-based restriction on the exercise of pure political speech; it is, therefore, presumptively invalid and subject to strict scrutiny.[4] (2016) *Susan B. Anthony List.* *See also R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992); *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir.2001).

{¶ 21} In our decision in *ODP*, we recognized the particular importance of First Amendment protection in political campaigns:

> Political speech is " 'at the core of our First Amendment freedoms.' " *Republican Party v. White* (2002), 536 U.S. 765, 774, 122 S.Ct. 2528, 153 L. Ed. 2d 694, quoting *Republican Party of Minn. v. Kelly* (C.A.8, 2001), 247 F.3d 854, 861. " 'Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " *McIntyre v. Ohio Elections Comm.* (1995), 514 U.S. 334, 346, 115 S.Ct. 1511, 131 L. Ed. 2d 426, quoting *Buckley v. Valeo* (1976), 424 U.S. 1, 14-15, 96 S.Ct. 612, 632, 46 L. Ed. 2d 659. Hence, the First Amendment has

---

[4] While (2016) *Susan B. Anthony List* focuses on two types of content-based restrictions on speech—that is, when a law governs a specific subject matter, and when a law discriminates among viewpoints within that subject matter, the Sixth Circuit Court of Appeals in its decision did not specifically label R.C. 3517.21(B)(9) and (10) as being one or another type of content-based restriction. Therefore, we decline to do so concerning R.C. 3517.21(B)(1). It is sufficient to simply state that the statute on its face is content based, presumptively unconstitutional and subject to strict scrutiny.

No. 14AP-929

> " 'its fullest and most urgent application' " in campaigns for
> political office. *McIntyre*, at 347, quoting *Buckley*, at 14-15.

*Id.* at ¶ 12. In doing so, we framed our decision within the holding in *Pestrak v. Ohio Elections Comm.,* 926 F.2d 573, 577 (6th Cir.1991) that knowing false speech merits no constitutional protection. *Pestrak* at 577. The Sixth Circuit Court of Appeals opinion in (2016) *Susan B. Anthony List* has now held that the "fundamental premise" of *Pestrak* is undermined by the United States Supreme Court's holding in *United States v. Alvarez*, _ U.S. _, 132 S.Ct. 2537 (2012), that the government cannot "selectively regulate false statements on certain topics." In (2016) *Susan B. Anthony List,* the Sixth Circuit reasoned that, "giving governments this power could lead to unwanted consequences and abuses." Citing *Alvarez* at 2547-48 (plurality opinion); (2016) *Susan B. Anthony List* at 472.[5] Since our prior decision in *ODP* relied on the Sixth Circuit's holding in *Pestrak* in directly addressing the constitutionality of R.C. 3517.21(B)(1), we overrule it as to that particular holding, shifting our reliance instead to (2016) *Susan B. Anthony List* and *Alvarez.*

{¶ 22} When the trial court rejected appellants' constitutional challenge of R.C. 3517.21(B)(1), it stated that *Alvarez* and the district court's decision (later affirmed by the Sixth Circuit Court of Appeals in (2016) *Susan B. Anthony List*) "show a movement towards striking down laws banning or placing restrictions on false speech on constitutional grounds." (Oct. 21, 2014 Decision at 6.) However, the trial court considered its own decision to be so bound by the Supreme Court of Ohio's holding in *In re Judicial Campaign Complaint Against O'Toole,* 141 Ohio St.3d 355, 2014-Ohio-4046, that it misstated the compelling governmental interest of the Commission, concluding that the content of R.C.3517.21(B)(1) (preventing candidates from misrepresenting that they already are performing the functions of an elected office when they are not elected) *was* the state's compelling governmental interest. Under this premise, it is not surprising that the trial court found R.C. 3517.21(B)(1)

---

[5] (2016) *Susan B. Anthony List* at 472:

> ("Permitting the government to decree this speech to be a criminal offense * * * would endorse government authority to compile a list of subjects about which false statements are punishable. That governmental power has no clear limiting principle."); [*Alvarez*] at 2553 (Breyer, J., concurring in the judgment) ("[T]he pervasiveness of false statements, made for better or for worse motives, made thoughtlessly or deliberately, made with or without accompanying harm, provides a weapon to a government broadly empowered to prosecute falsity without more. And those who are unpopular may fear that the government will use that weapon selectively * * *").

No. 14AP-929

to be narrowly tailored to serve such a state interest. We address the trial court's decision under both plenary review of issues of law in an administrative appeal and on de novo review on cross-motions for summary judgment. We also distinguish the differing compelling interests as expressed in the nonjudicial context of (2016) *Susan B. Anthony List* from that stated within the judicial campaign context of *O'Toole* as stated by the Supreme Court, along with discussion of the narrowness of regulations to protect them.

### 2. The State's Compelling Interest in Regulating Political Speech

{¶ 23} The Sixth Circuit Court of Appeals in (2016) *Susan B. Anthony List* recognized the State's compelling interest in enacting and administering R.C. 3517.21(B)(9) and (10).

> Here, Ohio's interests in preserving the integrity of its elections, protecting "voters from confusion and undue influence," and "ensuring that an individual's right to vote is not undermined by fraud in the election process" are compelling. *Burson v. Freeman*, 504 U.S. 191, 199, 112 S. Ct. 1846, 119 L. Ed. 2d 5 (1992) (plurality opinion); *see also McIntyre* [*v. Ohio Elections Comm.,* 514 U.S. 334,] 349 [(1995)] (Ohio's interest in preventing fraud and libel "carries special weight during election campaigns when false statements, if credited, may have serious adverse consequences for the public at large."), *id.* at 379 (Scalia, J., dissenting). ("[N]o justification for regulation is more compelling than protection of the electoral process. Other rights, even the most basic, are illusory if the right to vote is undermined." (internal quotation marks and citation omitted)).

(Emphasis added.) (2016) *Susan B. Anthony List* at 473-74. This is same interest as in appellants' case concerning R.C. 3517.21(B)(1).

{¶ 24} In *O'Toole,* the Supreme Court's stated compelling interest goes beyond protecting the integrity of elections of even *judicial* elections—more broadly, the State's interest is in public confidence in the judiciary. *O'Toole* at ¶ 53. In *O'Toole*, the Supreme Court upheld the constitutionality of part of its rule punishing judicial candidates for uttering false statements in campaigns by recognizing and specifically distinguishing the compelling state interests between nonjudicial and judicial elections.

> The Code of Judicial Conduct as a whole is premised on our recognition that the judicial branch of government differs from the legislative and executive branches of government in fundamental ways. "Unlike the other branches of government, the authority of the judiciary turns almost exclusively on its

> credibility and the respect warranted by its rulings." *Carey v. Wolnitzek,* 614 F.3d 189, 194 (6th Cir.2010).

*O'Toole* at ¶ 22. In sanctioning the former judge in *O'Toole* for using the title "judge" when she was not currently a judge, the Supreme Court explicitly described its compelling interest as avoiding injury to the *judiciary* and the public's confidence in an independent judiciary:

> Ohio has a compelling interest in promoting and maintaining an *independent judiciary, ensuring public confidence in the independence, impartiality, integrity, and competence of judges, and ensuring that the conduct of judicial candidates furthers, rather than impairs, these interests*. There is every reason to expect and insist that [judicial] candidates will be truthful in their campaign speech when they are seeking a judicial position.

 (Emphasis added.) *Id.* at ¶ 29.

> This intentional misrepresentation is not protected speech under the First Amendment. By repeatedly calling herself a judge when she was not, O'Toole undermined public confidence *in the judiciary as a whole. Such misconduct injures both the public and the judiciary from the moment* the *lie is uttered, and that injury cannot be undone with corrective speech.* Under the circumstances, we perceive no constitutional infirmity in the commission's application of Jud.Cond.R. 4.3 to this conduct.

(Emphasis added.) *Id.* at ¶ 53.

{¶ 25} It is notable that the Ohio Code of Judicial Conduct contains within its canons, Canon 4, governing judicial campaigns, while other canons within the same Code govern judges' actions generally, whether or not they are engaged in an election. Because judicial campaigns are viewed in Ohio as an extension of judicial conduct and not separate from it, the Supreme Court of Ohiorejected the application of *Alvarez,* stating the following:

> *Alvarez* does not consider whether the state can ever have a compelling interest in restricting false speech solely on the basis that it is false so that such prohibition could withstand strict scrutiny.

> We determine that neither [*Republican Party of Minnesota v. White*, 536 U.S. 765, (2002)] nor *Alvarez* forces us to reject the compelling interests identified in our Code of Judicial Conduct as justification for its regulation of certain speech.

No. 14AP-929

*O'Toole* at ¶ 28-29.  In rejecting the application of *Alvarez* in then former Judge O'Toole's case, the Supreme Court found that judicial campaigns have more to do with public confidence in the judiciary than the integrity of Ohio's election process.  The Supreme Court not only found the State's interest to be compelling, but it also found at least a part of the regulatory scheme within Canon 4 of the Code of Judicial Conduct to be narrowly tailored to protect the compelling interest so as to withstand strict scrutiny.  *O'Toole* at ¶ 28.  As such, the Supreme Court's rejection of *Alvarez* in *O'Toole,* freed the trial court to *consider* rather than deny the application of *Alvarez* in appellants' case, since the State's compelling interests between judicial and nonjudicial elections were explicitly stated in *O'Toole* not to be the same.

{¶ 26} More importantly, the Sixth Circuit Court of Appeals in (2016) *Susan B. Anthony List* used the *Alvarez* opinion to unbind itself from its prior *Pestrak* holding concerning the predecessor statute to R.C. 3517.21.  Accordingly, (2016) *Susan B. Anthony List* persuades us that the trial court could and should have applied *Alvarez* and not *O'Toole* in deciding appellants' appeal and declaratory judgment action in analyzing the constitutionality of R.C. 3517.21(B).  Accordingly, we apply *Alvarez* as did the Sixth Circuit in (2016) *Susan B. Anthony List* in determining the related issues of the constitutionality of R.C. 3517.21(B)(1).

### 3.  Narrowness of Content Regulation of Protected Political Expression

{¶ 27} "To survive strict scrutiny * * * a State must do more than assert a compelling state interest—it must demonstrate that its law is necessary to serve the asserted interest." *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion).  When strict scrutiny of content-based regulation is required, the regulation is presumed unconstitutional, and the government must show that the statute is the least restrictive means among available, effective alternatives of furthering the asserted compelling state interest.  *Brown v. Entertainment Merchants Assn.,* 564 U.S. 786, 799 (2011), citing *Reno v. Am. Civ. Liberties Union,* 521 U.S. 844, 874 (1997) and *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813 (2000).

{¶ 28} The Sixth Circuit Court of Appeals found concerning R.C. 3517.21(B)(9) and (10) in (2016) *Susan B. Anthony List* that, "Ohio's laws do not meet the second requirement: being narrowly tailored to protect the integrity of Ohio's elections. Thus, this is not such a 'rare case' that survives strict scrutiny." *Id.* at 474.  The Sixth Circuit found that, "Ohio's laws

No. 14AP-929

do not pass constitutional muster because they are not narrowly tailored in their (1) timing, (2) lack of a screening process for frivolous complaints, (3) application to non-material statements, (4) application to commercial intermediaries, and (5) over-inclusiveness and under-inclusiveness." *Id.* at 474. Again, noting the trial court's reliance on *O'Toole*, the Commission's processes to adjudicate a complaint under Title 35 of the Ohio Revised Code differ from those under Canon 4 of the Code of Judicial Conduct and the Rules for Governance of the Courts of the Supreme Court of Ohio.[6] However, both the Supreme Court in *O'Toole* and the Sixth Circuit in (2016) *Susan B. Anthony List* hold that whatever the process, the regulatory scheme must be narrowly tailored or be the "least restrictive" to achieve the State's compelling interest.

> The rule must also be shown to be "the least restrictive means among available, effective alternatives" of furthering that interest. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

*O'Toole* at ¶ 20. "Ohio's laws do not pass constitutional muster because they are not narrowly tailored." (2016) *Susan B. Anthony List* at 474.

{¶ 29} Having recognized that, despite the fact that both R.C. 3517.21(B)(1) and Jud.Cond.R. 4.3(A) prohibit using the title of an office that the candidate does not currently hold (with one exception in R.C. 3517.21(B)(1), concerning the use of the word, "re-elect"),[7] the compelling state interests underlying these two similar content-based regulations differ. Thus, where appropriate, we compare the regulatory schemas of the Commission with that of the Supreme Court of Ohio, acknowledging the processes do differ in form and substance, because each is aimed at accomplishing differing state interests, yet they share the same need

---

[6] For instance, the rules of procedure of the Ohio Board of Professional Conduct require that a complaint filed before the board remain confidential unless and until probable cause is found, and specifically, that the board's deliberations are confidential, including its report, until it is filed with the Supreme Court of Ohio. *See* Gov.Bar R. V(1)(H), (8)(A)(1), and (8)(B)(2). Conversely, the Commission's process is a completely public process, including the Commission's deliberations. Ohio Adm.Code 3517-1-12.

[7] We note that the portion of the statute, concerning the use of the term "re-elect" is permitted, for example, for those candidates who previously have been elected Ashtabula County treasurer but have left office and wish to return to office. If such a candidate runs against the incumbent who currently holds that office, both candidates are permitted by the statute to use "re-elect" when running for the same office because that is a true statement by each.

No. 14AP-929

for narrowly tailored state regulation to protect them. Since Magda's election is nonjudicial, we apply the legal and constitutional tests in (2016) *Susan B. Anthony List.*

{¶ 30} In (2016) *Susan B. Anthony List,* the Sixth Circuit Court of Appeals affirmed the district court's decision and succinctly stated the problems with the Commission's statutory procedures, citing timing, lack of a screening process for frivolous complaints, the law's application to non-material statements, its application to commercial intermediaries and its over-inclusiveness and under-inclusiveness. (2016) *Susan B. Anthony List* at 474. As to timing, the Sixth Circuit stated as follows:

> First, the timing of Ohio's administrative process does not necessarily promote fair elections. While the laws provide an expedited timeline for complaints filed within a certain number of days before an election, complaints filed outside this timeframe are free to linger for six months. Ohio Rev. Code §§ 3517.154(A)(2)(a), 3517.155, 3517.156(B)(1). Even when a complaint is expedited, there is no guarantee the administrative or criminal proceedings will conclude before the election or within time for the candidate's campaign to recover from any false information that was disseminated. Indeed, candidates filing complaints against their political opponents count on the fact that "an ultimate decision on the merits will be deferred until after the relevant election." *Driehaus*, 134 S. Ct. at 2346 (quoting Br. of Amicus Curiae Ohio Att'y Gen. Michael DeWine in Supp. of Neither Party (filed U.S. Mar. 3, 2014) (No. 13-193), 2014 U.S. S. Ct. Briefs LEXIS 891, 2014 WL 880938, at *14-15 ("DeWine Amicus Br.")). A final finding that occurs after the election does not preserve the integrity of the election. On the other hand, in many cases, "a preelection probable-cause finding . . . itself may be viewed [by the electorate] as a sanction by the State," *Driehaus*, 134 S. Ct. at 2346 (quoting DeWine Amicus Br., 2014 U.S. S. Ct. Briefs LEXIS 891, 2014 WL 880938, at ¶ 13), that "triggers 'profound' political damage, even before a final [Commission] adjudication," *Ohio Elections Comm'n*, 45 F. Supp. 3d at 772 (quoting DeWine Amicus Br., 2014 U.S. S. Ct. Briefs LEXIS 891, 2014 WL 880938, at *6). The timing of Ohio's process is not narrowly tailored to promote fair elections.

(2016) *Susan B. Anthony List* at 474. Thus, the inherent timing problems with the Commission's statutory and regulatory processes may actually hinder fair elections.

{¶ 31} Concerning lack of a screening process for frivolous complaints, the Sixth Circuit Court of Appeals in (2016) *Susan B. Anthony List* said:

No. 14AP-929

> Ohio fails to screen out frivolous complaints prior to a probable cause hearing. *See* Ohio Rev. Code § 3517.154(A)(1). While this permits a panel of the Commission to review and reach a probable cause conclusion on complaints as quickly as possible, it also provides frivolous complainants an audience and requires purported violators to respond to a potentially frivolous complaint. "Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents." *Driehaus*, 134 S. Ct. at 2345; *see also* Ohio Rev. Code §§ 3517.21(C), 3517.153. There is no process for screening out frivolous complaints or complaints that, on their face, only complain of non-actionable statements, such as opinions. *See* Ohio Rev. Code § 3517.154(A)(1). Indeed, some complainants use the law's process "to gain a campaign advantage without ever having to prove the falsity of a statement . . . tim[ing] their submissions to achieve maximum disruption . . . forc[ing political opponents] to divert significant time and resources . . . in the crucial days leading up to an election." *Driehaus*, 134 S. Ct. at 2346 (quoting DeWine Amicus Br., 2014 U.S. S. Ct. Briefs LEXIS 891, 2014 WL 880938, at ¶ 7, ¶ 14-15).

*Id.* at 474-475. We agree that this applies to complaints made pursuant to R.C. 3517.21(B)(1). We also note that, in comparing the Supreme Court's analysis of a similar judicial campaign regulation in *O'Toole,* its regulatory scheme is more narrowly tailored in respect of frivolous complaints. Matters before a three-member probable cause hearing panel of the Board of Professional Conduct of the Ohio Supreme Court may be dismissed in their entirety by a unanimous panel vote before the matter is ever subject to public disclosure or scrutiny. Gov.Bar R. V(12)(G); *c.f.* Ohio Adm.Code 3517-1-10(D) and (E). Conversely, for nonjudicial campaigns such as Magda's, Ohio Adm.Code 3517-1-01(D) and (E) provide as follows:

> (D) At the [Commission] probable cause panel meeting:
>
> (1) The panel shall not hear arguments, receive evidence or take testimony *unless*:
>
> (a) All parties (whether pro se or through counsel) have filed a stipulation agreeing to such procedure and *a majority of panel members, in their sole discretion, agree to do so*; or
>
> (b) Any panel member wishes to request specific information which will aid in a proper determination of the matter.

> (2) The panel will review the complaint and any additional information which may be presented to it and receive any recommendation from counsel.

> (3) After a review of all information available at the meeting, the panel shall:

> (a) Dismiss the matter, or any part thereof:

> (i) If the panel finds that there is no probable cause;

> (ii) Upon request of the complainant; or

> (iii) If commission jurisdiction is not found; or

> (b) Find that there is sufficient probable cause and refer the complaint to the full commission for further consideration; or

> (c) Find that the evidence is insufficient for the panel to make a determination and request that an investigatory attorney be appointed. Such investigatory attorney shall be selected by the staff attorney to the commission upon recommendation by the chair and vice-chair of the commission. If such request is made, the panel shall also refer the matter for a timely hearing before the full commission.

> (E) The full commission shall hear the complaint not later than ten business days after referral by the panel unless there is good cause for the matter to be continued consistent with paragraph (B) of rule 3517-1-06 of the Administrative Code. Said hearing shall be held in the manner outline in rule 3517-1-11 of the Administrative Code.

(Emphasis added.)

{¶ 32} The Rules for Government of the Bar further the interest of the Supreme Court of Ohio in protecting the integrity of the judiciary by preventing candidates for judge from being subjected to frivolous complaints before the public. Conversely, the rules of the Commission hazard the churning of frivolous complaints against nonjudicial candidates in a process displayed at a public probable cause hearing. Commission rules allow this to occur potentially without the opportunity for the accused candidate to speak in his or her own defense, even if both parties agree to it, unless a commission fiat is exercised to allow it. Decisions to deny or punish free speech at the probable cause stage are based on "information available at the meeting." Ohio Adm.Code 3517-1-01(D) and (E).

No. 14AP-929

{¶ 33} The Sixth Circuit Court of Appeals in (2016) *Susan B. Anthony List* further noted that "Ohio's laws apply to *all* false statements, including non-material statements. *See* Ohio Rev. Code § 3517.21(B)(9)-(10)," including false statements made "outside the political arena—so long as the statement is 'designed to promote the election, nomination, or defeat of the candidate,' and is made in broadly defined 'campaign materials.' *See* Ohio Rev. Code § 3517.21(B)(10)." (Emphasis added.) (2016) *Susan B. Anthony List* at 475. The Sixth Circuit stated that, "[p]enalizing non-material statements, particularly those made outside the political arena, is not narrowly tailored to preserve fair elections." *Id.* We agree and apply that rationale to R.C. 3517.21(B)(1). In doing so, we observe that the trial court's review of the companion Scarmack appeal resulted in distinguishing her case from Magda's, even though Scarmack was found by the Commission to have violated the statute in the context of a single Facebook post.

{¶ 34} The Sixth Circuit Court of Appeals recognized that R.C. 3517.21(B)(1) applies to "anyone who advertises, 'post[s], publish[es], circulate[s], distribute[s], or otherwise disseminate[s]' false political speech. *See* Ohio Rev. Code § 3517.21(B)(10)." (2016) *Susan B. Anthony List* at 475. Recognizing that this broad prohibition applies to "commercial intermediates," the Sixth Circuit stated that "conducting hearings against or prosecuting a billboard company executive, who was simply the messenger, is not narrowly tailored to preserve fair elections." *Id.* We also agree, and we note that Magda's husband, Steve Magda, while not a billboard company executive, now stands to have on his "record" a finding against him by the Commission, affecting his activities in future campaigns and permitting the Commission to punish him more severely for a subsequent First Amendment offense, and he was not even the candidate. *See* Ohio Adm.Code 3517-1-14(B)(5)(a).[8]

{¶ 35} Finally, the Sixth Circuit Court of Appeals found Ohio's false statement statutory scheme as contained in R.C. 3517.21(B)(9) and (10) to be "both over-inclusive and underinclusive," examining the pitfalls and weaknesses of the Commission's processes in "promoting fair elections." (2016) *Susan B. Anthony List* at 475.

> At the same time, the law may not timely penalize those who violate it, nor does it provide for campaigns that are the victim of

---

[8] "In determining the amount of a fine and whether to impose the maximum or minimum penalty allowable, the commission shall take into consideration, but shall not be controlled by, the following: (a) Prior violations of Title XXXV of the Revised Code by the party before the commission." Ohio Adm.Code 3517-1-14(B)(5)(a)

No. 14AP-929

> potentially damaging false statements. "[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed* [*v. Town of Gilbert*, _ U.S. _, 135 S.Ct. 2218, 2232(2015)] (internal quotation marks and citation omitted). Though Ohio's interests "are assuredly legitimate, we are not persuaded that they justify [such an] extremely broad prohibition." *McIntyre*, 514 U.S. at 351. Indeed, courts have consistently erred on the side of permitting more political speech than less. *See, e.g.*, *Alvarez*, 132 S. Ct. at 2550.
>
> * * *
>
> *Such glaring oversteps are not narrowly tailored to preserve fair elections.*
>
> Other courts to evaluate similar laws post-*Alvarez* have reached the same conclusion.

(Emphasis added.) *Id.* at 475-76. Like the Sixth Circuit, we look to *Alvarez* in finding the law's enforcement mechanism too broad to address the State's compelling interest:

> [T]there remains a risk of chilling that is not completely eliminated by *mens rea* requirements; a speaker might still be worried about being prosecuted for a careless false statement, even if he does not have the intent required to render him liable. And so the prohibition may be applied where it should not be applied, for example, to bar stool braggadocio or, in the political arena, subtly but selectively to speakers that the Government does not like.

(Emphasis omitted.) *Alvarez* at 2555. Steve Magda admittedly did not realize he could not simply state his wife's name on campaign literature with the title of the office she sought without qualifying it with more language. On its face and with particular application to the appellants' situation, R.C. 3517.21(B)(1) is overbroad and unconstitutional. R.C. 3517.21(B)(1) represents a broad-sweeping effort to control the election process beyond what is necessary to achieve election integrity. The Commission has not presented sufficient evidence that R.C. 3517.21(B)(1) is actually needed to achieve this aim or even that it does achieve this aim, beyond what counterspeech may feasibly remedy. In this instance, the statements on appellants' campaign materials could have been debunked readily and obviously with the counterstatement that Magda was not and has never been the Ashtabula County treasurer.

No. 14AP-929

{¶ 36} "A statute which, in the claimed interest of free and honest elections, curtails the very freedoms that make possible exercise of the franchise by an informed and thinking electorate, and does this by * * * serving as a prior restraint upon expression not in fact forbidden as well as upon what is, cannot be squared with the First Amendment." *United States v. Congress of Indus. Orgs.*, 335 U.S. 106, 155 (1948) (Rutledge J., concurring), quoted in *Commonwealth v. Lucas,* 472 Mass. 387, 402 (2015). The fact that anyone may file a complaint, for what ultimately could be punished as a crime, poses the further risk that an individual unbound by ethical restrictions imposed on government officials might file a meritless application at a crucial time and divert the attention of an entire campaign from the meritorious task of supporting or defeating a candidate or question. *Lucas* at 404; *281 Care Commt. v. Arneson*, 766 F.3d 774, 790 (8th Cir.2014).

{¶ 37} R.C. 3517.21(B)(1) created an undue burden of litigation for Magda, her husband, and her campaign. It is the same burden that attends the defense of a false statement charge brought under subsections (B)(9) and (10) of R.C. 3517.21. In light of the Sixth Circuit Court of Appeals' opinion in (2016) *Susan B. Anthony List* adopting the rationale of *Alvarez,* we conclude that R.C. 3517.21(B)(1) does not satisfy strict scrutiny. *See Alvarez* at 2551; (2016) *Susan B. Anthony List* at 474. We find that R.C. 3517.21(B)(1) is more burdensome than necessary to accomplish the State's asserted objectives and is not narrowly tailored to serve the State's compelling interest in protecting the integrity of Ohio elections. R.C. 3517.21(B)(1) is therefore unconstitutional on its face. Appellants' first and second assignments of error are sustained.

### 4. Permanent Injunction Against Enforcement of R.C. 3517.21(B)(1) on Grounds of Unconstitutionality

{¶ 38} Since R.C. 3517.21(B)(1) is an excessive restriction on the freedom of speech guaranteed under the First and Fourteenth Amendments of the United States Constitution, enforcement of the statute should be permanently enjoined. "Injunctive relief is warranted when a statute is unconstitutional, enforcement will infringe upon constitutional rights and cause irreparable harm, and there is no adequate remedy at law." *United Auto Workers Local Union 1112 v. Philomena*, 121 Ohio App.3d 760, 781 (10th Dist.1998), citing *Olds v. Klotz*, 131 Ohio St. 447 (1936), paragraph two of the syllabus. A finding that a constitutional right has been threatened or impaired mandates a finding of irreparable injury as well. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.2001), citing *Elrod v. Burns*, 427 U.S. 347,

No. 14AP-929

373 (1976). Having sustained appellants' first and second assignments of error, we hold that the granting of an injunction against the enforcement of the statute is warranted.

## V. CONCLUSION

{¶ 39} For the foregoing reasons, we overrule appellants' third assignment of error and sustain appellants' first and second assignments of error. Notwithstanding our conclusion with respect to the third assignment of error, that appellants violated the statute, the Commission's order finding a violation of R.C. 3517.21(B)(1) must be vacated since we have found that statute to be unconstitutional. We reverse this matter with instructions for entry of judgment for appellants on the amended complaint, declaring R.C. 3517.21(B)(1) to be unconstitutional on its face and that enforcement of this subsection must be enjoined, and hereby remanding this cause for any further proceedings consistent with this decision to the Franklin County Court of Common Pleas.

*Judgment reversed;*
*cause remanded with instructions.*

DORRIAN, P.J., and LUPER SCHUSTER, J. concur.

_____